# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| ELIZABETH WEIGAND, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 5:05-cv-392 (HL) |
| | : | |
| CITY OF PERRY, GEORGIA and CHIEF | : | |
| GEORGE POTTER, individually, and in | : | |
| his official capacity as Chief of the Perry | : | |
| Police Department, | : | |
| | : | |
|     Defendants. | : | |

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment (doc. 21). Plaintiff Elizabeth Weigand was demoted and ultimately terminated from her position with the City of Perry Police Department. Plaintiff alleges that she was discriminated against on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and in violation of 42 U.S.C. § 1983. Specifically, Plaintiff claims that she was denied a promotion, was disciplined unfairly, and was ultimately terminated by the City of Perry Police Department all for behavior which she alleges would not have resulted in similar consequences for her male co-workers. Additionally, Plaintiff alleges that Defendants tortiously interfered with a contractual relationship of hers, and that they destroyed her livelihood. In her prayer for relief, Plaintiff seeks compensatory damages, punitive damages, and attorney fees. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

Construing the facts in the light most favorable to Plaintiff, the non-moving party, the Court

finds as follows. On November 21, 1994, Plaintiff Elizabeth Weigand began working for the City of Perry Police Department as a patrol officer. At the time she was hired, Plaintiff had six years of law enforcement experience. After almost three years of service with the Department, during which time she received favorable reviews, Plaintiff was promoted to the rank of Corporal. Three years later, on July 1, 2000, Plaintiff was promoted again to the rank of Sergeant, and received the accompanying pay raise.

In May of 2001, the position of Community Services Division Commander ("CSDC") was about to become available. The CSDC position was reserved for exemplary officers because of the position's high involvement with the community. One of the responsibilities of the position included overseeing the Drug Awareness Resistance Education ("DARE") program at local schools. At the time, the position was held by Captain Brian Childress. Captain Childress informed Chief George Potter that his choice for a replacement was Plaintiff. After Captain Childress had recommended Plaintiff, Chief Potter requested that the position be downgraded from a captain to lieutenant, so that a lower ranking officer could hold the position. Plaintiff was interested in the position and applied for it in June of 2001. Chief Potter informed Plaintiff that the position had been downgraded, but that he was open to the idea of switching it back. On June 26, 2001, Plaintiff was promoted to CSDC and the rank of lieutenant, and she received the accompanying pay raise.

On October 6, 2004, Plaintiff received a letter of reprimand for failing to properly supervise an officer. Three weeks earlier, a school resource officer under Plaintiff's supervision had stolen a bottle of painkillers during his lunch break. It was later revealed that Plaintiff wrote the school resource officer a letter of recommendation on City of Perry Police Department letterhead, even though she was aware of the school resource officer's transgressions at the time she drafted the

2

letter, and that a potential ramification of the officer's actions was termination.

On October 6, Captain William Phelps read the letter of reprimand to Plaintiff, as was the standard practice. While being read the letter, Plaintiff contested the discipline in a disruptive fashion, at times raising her voice in a disrespectful manner. As a result, Defendant Chief Potter initiated an internal investigation meant to address Plaintiff's insubordination (her reaction to the letter of reprimand). During the investigation, At the conclusion of the investigation, a show-cause hearing was held, and Plaintiff was found to have violated four Department policies: (1) Conduct Unbecoming an Officer, (2) Department Letterhead, (3) Insubordination, and (4) Unsatisfactory Performance. As a result, Plaintiff was demoted two ranks and her pay was reduced.

Plaintiff appealed the disciplinary decision, and a hearing was conducted before Lee Gilmour, the City Manager. During this hearing it was uncovered that Plaintiff lied during the earlier internal investigation–while Plaintiff earlier claimed to not have known the extent of the resource officer's punishment, she admitted that she knew he was to be terminated for theft of narcotics before she wrote the recommendation letter. Ultimately, Plaintiff's original punishment was affirmed, but because of the revelation that she had lied during the earlier investigation and show-cause hearing–thereby adding two additional Department policy violations–Chief Potter recommended that Plaintiff be terminated.

Plaintiff filed her Complaint on October 26, 2005. The Complaint contains eight counts: (1) gender discrimination in violation of Title VII due to Defendant City of Perry's DEMOTION, (2) gender discrimination in violation of 42 U.S.C. § 1983 as a result of Defendant Potter's practice of discriminatory discipline against Plaintiff because of her sex, (3) gender discrimination in violation of Title VII due to Plaintiff's TERMINATION, (4) gender discrimination in violation of 42 U.S.C.

3

§ 1983 due to Defendant Potter's practice of unlawful termination against Plaintiff because of her sex, (5) destruction of livelihood due to Plaintiff's earning capacity following her termination from the City of Perry Police Department, (6) tortious interference in violation of Georgia law for Defendant Potter's discriminatorily excessive disciplinary methods , (7) punitive damages against Defendant Potter for his malicious and willful and wanton actions toward Plaintiff, and (8) a demand for attorney fees due to Defendant Potter's willful and intentional violations of 42 U.S.C. § 1988.

## II. STANDARD OF REVIEW - SUMMARY JUDGMENT

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995). The Court may not, however, make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the

4

pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Gender Discrimination

Four of the eight counts of the Complaint are styled simply as "Gender Discrimination." As plead in the Complaint, Plaintiff alleges that her demotion and her eventual termination were motivated by her employer's discriminatory intentions that ultimately violated both Title VII and § 1983. Specifically, Plaintiff proceeds under Title VII against her employer, the City of Perry, and she proceeds under § 1983 against her boss, Chief George Potter. Though the Supreme Court has never expressly held as much, it is well established in the Eleventh Circuit that claims of employment discrimination pursued under both Title VII and § 1983 share the same elements of proof and are subject to the same analytical framework. See Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005) (applying the same framework and noting that "[w]hen section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same.") (quoting Hardin v. Stynchcomb, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)); see also Thigpen v. Bibb County, Ga. Sheriff's Dep't, 223 F.3d 1231, 1239 (11th Cir. 2000). Therefore, this Court will apply the same analysis to the discrimination claims against Defendants regardless of which statute they were alleged pursuant to in Plaintiff's Complaint.

5

Discrimination claims supported by circumstantial evidence are treated under the familiar burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981). Under that framework, the plaintiff bears the initial burden of establishing the elements of a prima facie case of discrimination. The plaintiff's burden at this stage is not onerous. Once the plaintiff has made out a prima facie case, the burden then shifts to the defendant-employer to come forward with one or more legitimate, non-discriminatory reasons for the employee's rejection. The defendant-employer's burden is one of production, not persuasion. Finally, if the defendant-employer meets this burden of production, the plaintiff must then establish that each of the defendant's proffered reasons for doling out adverse employment actions is pretextual. Burdine, 450 U.S. at 253-56.

This burden-shifting approach applies only to discrimination claims supported by circumstantial evidence; claims which, by their nature, rely for success on inferential proof. It does not apply to discrimination claims supported by direct evidence, however, because the presence of direct evidence eliminates the need for inferential guesswork. See Bass v. Bd. of County Comm'rs. Orange County, Florida, 256 F.3d 1095, 1103-04 (11th Cir. 2001). In the case at bar, Plaintiff's claims of discriminatory discipline because of her demotion and eventual termination are based exclusively on circumstantial evidence.

**1.     Demotion**

Plaintiff alleges that she was denied promotions and pay increases that she was qualified to receive. Further, she claims that her job responsibilities were substantially reduced when the terms and conditions of her employment were negatively impacted. Specifically, Plaintiff points to

6

Defendant Potter's decision to downgrade a position in rank from captain to lieutenant. Plaintiff asserts that she was subjected to these adverse employment actions due to her gender. Defendants deny that discrimination was the motivating factor, and assert that a reduction in job responsibility mandated the reduction.

### a. Prima facie case

To establish the prima facie elements of a failure-to-promote discrimination claim under Title VII, § 1981, or § 1983, a plaintiff must produce evidence that: "(1) he was qualified and applied for the position; (2) he was rejected despite his qualifications; and (3) other equally or less qualified employees who are not members of his race were hired." Bass, 256 F.3d at 1104. It is uncontroverted that Plaintiff did not possess the requisite number of credit hours for promotion to Lieutenant, let alone for promotion to Captain as the position once held. As Plaintiff was the best candidate for the job, she was hired to the CSCD position and received the promotion in rank to lieutenant, but that does not change the fact that she was not qualified for promotion to Captain. As a result, the downgrade for the CSCD position cannot be said to have been motivated by gender discrimination. In furtherance of this conclusion, the Court notes the fact that Plaintiff was awarded the position, albeit at the rank of lieutenant, over two male candidates. Accordingly, summary judgment in favor of Defendants is appropriate with respect to Plaintiff's claim of discrimination for failure to promote.

### 2. Termination

Plaintiff alleges that the motivation for her termination was gender discrimination. She avers that males under the employ of Defendants did not suffer similar fates. Defendants stand behind the discipline meted out, alleging that such measures were justified where Plaintiff was derelict in

7

supervisory duties, and dishonest during an internal investigation. To determine whether Plaintiff's termination violated Title VII, the Court again performs the McDonnell Douglas burden shifting framework.

### a. Prima facie case

To prevail on a claim for disparate treatment in discipline under Title VII based on circumstantial evidence, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). Interestingly, Plaintiff chose not to address the fourth element in her response brief to Defendants Motion for summary judgment. Unfortunately for Plaintiff, the question of whether any similarly situated individuals outside the protected class were treated more favorably is critical to the establishment of her prima facie case. Strangely enough, while it was the only point of contention in Defendants' summary judgment motion, Plaintiff chose to focus her attention on the analysis of the other elements of a prima facie case that Defendants essentially conceded.

Since the fourth element is the only one controverted, the Court will focus its analysis on whether individuals similarly situated to Plaintiff were treated differently. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). While Plaintiff, lists

8

a number of comparators in her Statement of Material Facts, no attempt is made in her response brief to argue that any of her co-workers were similarly situated. Without this demonstration, it cannot be said that Plaintiff satisfied her burden of establishing a prima facie case. At this point the analysis of Plaintiff's discrimination claim for her termination from employment is complete, and summary judgment in favor of Defendants is appropriate.

B.   **Destruction of Livelihood**

The fifth count in the Second Amended Complaint (doc. 15-2) is for Destruction of Livelihood. Plaintiff alleges that Defendants, through purportedly discriminatory practices, intentionally sought to deprive Plaintiff of her salary and benefits she earned and would earn through her employment with the City of Perry Police Department. Essentially, Plaintiff argues that she has been deprived of her deprived of her livelihood by Defendants and, as such, she is entitled to compensation. While Plaintiff couches destruction of livelihood as though it is a substantive claim–and Defendants in their brief challenge it as though it is a claim–the Court is unfamiliar with a substantive cause of action for the destruction of livelihood.[1] The alleged destruction of Plaintiff's livelihood was brought about by the alleged discrimination she faced at the hands of Defendants solely because of her gender. In this case the behavior that led to the destruction is actionable through Title VII and § 1983, and the resulting loss of livelihood would be redressed through the award of the compensatory damages prayed for in the Complaint. However, the destruction of livelihood is not, in and of itself, a cause of action that can stand on its own, nor is it a remedy

---

[1] The Court notes the absence of a citation to any form of authority throughout the briefing cycle of the destruction of livelihood issue. If the parties are treating destruction of livelihood as a substantive cause of action, they have not provided any legal analysis for or against it.

9

separate and apart from that recoverable through Title VII and §1983 channels. Therefore, the Court will dismiss the count as a claim, but acknowledges that the facts plead in support of the claim can certainly be used to justify a jury award should the case proceed that far.

### C. Tortious Interference

Plaintiff claims that Defendant Potter's discriminatorily excessive disciplinary methods constituted a tortious interference actionable at law. Although Plaintiff cites a correct standard, her analysis is misguided. The parties seem to agree on the standard for establishing a claim for tortious interference with business relations: "To establish a cause of action for tortious interference with business relations under Georgia law, a plaintiff must show that the defendant, (1) acting improperly and without privilege (2) and acting purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff (4) for which the plaintiff suffered some financial injury." Bartholomew v. AGL Res., Inc., 361 F.3d 1333, 1340 (11th Cir. 2004).

However, in Georgia, "[t]ortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." Renden, Inc. v. Liberty Real Estate P'ship, 444 S.E.2d 814, 817 (Ga. Ct. App. 1994). In the Complaint, Plaintiff alleges that Defendant Potter tortiously interfered with Plaintiff Weigand's employment contract with the City of Perry to act as a Perry Police Lieutenant. To recover under a theory of tortious interference with contractual relations, a plaintiff must establish "[a]n intentional and non-privileged interference by a third party with existing contract rights and relations." Phillips v. MacDougald, 464 S.E.2d 390, 393 (Ga. Ct. App. 1995) (noting that interference need not rise to level of breach of contract). Such interference with

a contract right or relationship need not result in a breach of a contract to be actionable; it is sufficient if the invasion retards the performance of the duties under the contract or makes the performance more difficult or expensive. Id.

In this case, Defendant Potter would be the putative third party that interfered with Plaintiff's existing contract rights created by her employment with the City of Perry. However, Plaintiff's claim must fail because Defendant Potter cannot be classified as a third party within the meaning of the Georgia tort. Plaintiff's tortious interference claim requires proof of "an independent wrongful act of interference by a stranger to the contract." Barnwell v. Barnett & Co., 476 S.E.2d 1, 2 (Ga. Ct. App. 1996). In Georgia, a defendant is not a "stranger" in the tortious interference context when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant"s contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations. Britt/Paulk Ins. Agency v. Vandroff Ins. Agency, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996) (noting requirement that plaintiff must establish that defendant is a "stranger" applies to claims for both tortious inference with contractual relations and tortious inference with business relations). Here, Defendant Potter is Plaintiff's superior, and his decisions with respect to her employment are certainly essential to the employment relationship Plaintiff has with the City of Perry. It is likely that Plaintiff included this count as a supplemental vehicle to carry her claims of gender discrimination, but that sort of "interference" is not contemplated by Georgia business tort

law, and said law provides no recourse and relief to Plaintiff.[2]  Accordingly, the Court grants summary judgment to Defendants with respect to Plaintiff's tortious interference claim.

### D. Retaliation

Defendants in their summary judgment brief challenge the merits of a retaliation claim.  Not surprisingly, Plaintiff, in her response, argues the merits of a retaliation claim against Defendants.  However, the Court cannot find a claim for retaliation ever being made by Plaintiff in any version of the Complaint.  After a review of the docket, the undersigned cannot find a properly pleaded retaliation claim–discouraging considering Plaintiff amended her Complaint twice.  It is the belief of this Court that Defendants addressed this issue in their summary judgment brief out of an abundance of caution, but again, the undersigned is discouraged that no mention was made of the absence of a retaliation claim in the final version of the Complaint.

### E. Punitive Damages and Qualified Immunity

As none of Plaintiff's claims have survived summary judgment, the issue of punitive damages is moot.  Further, the Court makes no ruling as to the application of qualified immunity to Defendant Potter as resolution of the issue is not necessary to the disposition of the claims against him.

## IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (doc. 21) is GRANTED.

---

[2] Plaintiff, in response to Defendants' Motion for Summary Judgment, references Defendant Potter's association with the Houston County District Attorney's office while conducting an internal investigation of Plaintiff's conduct.  Plaintiff never argues that she ever had a business or contractual relationship with the Houston County District Attorney's office.  Mention of the District Attorney is probably made to support the argument that Defendant Potter interfered with Plaintiff's employment contract with the City of Perry, but as has already been discussed, this claim shall not lie.

SO ORDERED, this 7th day of February, 2008.

**/s/ *Hugh Lawson***
HUGH LAWSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

HL/cbb